THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MYRON FLEMING, Defendant-Appellant.

First District (1st Division)    No. 79-387

Opinion filed November 17, 1980.

Ralph Ruebner and Susan Solovy, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Kathleen Warnick, and Susan Ruscitti Grussel, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, defendant Myron Fleming was found guilty of armed robbery and sentenced to 4 to 6 years' imprisonment. Defendant appeals, contending that (1) the trial court erred when it refused to conduct an evidentiary hearing to determine whether defendant was denied his right to an impartial jury because four prospective jurors, who were black, were excused from jury service through the State's exercise of

peremptory challenges; (2) the trial court erred in allowing the State to present evidence of defendant's previous conviction for robbery; (3) the lineup was unduly suggestive, rendering the victim's and two witnesses' in-court identifications unreliable; and (4) the State violated defendant's right to post-arrest silence during both cross-examination of defendant and closing argument.

On December 24, 1973, at 4:20 p.m., Josephine Caira, the complaining witness, parked her automobile in the parking lot located behind Marshall Field & Company (Field's) at Harlem Avenue and Lake Street, in Oak Park, Illinois. She returned to her car at approximately 5 p.m. She unlocked the car door and was halfway into her car when she heard a voice say to her: "I have a gun, give me your money or I will shoot you." Caira testified that the lighting was very clear and very good because big hung lights were over the cars. The lights were similar to street lights or expressway lights, but were much brighter. She also testified that the dome light in her car went on when she opened the car door. Caira stated that when defendant first spoke to her his face was about one foot from her face and that throughout the incident she was looking directly at defendant. Caira gave defendant her money. Defendant sat in the driver's seat and closed and locked the car door. Caira then made her packages fall off the front seat onto the floor. At this time, she clicked the automatic open switch on the passenger's door and ran out of the car screaming. She observed defendant leave her car and walk to an old beaten-up white car. The car's rear license plate was hanging on with wire. When she was still at the scene of the crime, a police officer approached Caira and told her "we have him, we arrested him."

Approximately one-half hour later, Caira went to the Oak Park Police Station to view a lineup. Caira testified that out of a lineup in which three men participated, she identified defendant as the man who had robbed her. She stated that defendant and one of the other participants wore hats. Caira also made an in-court identification of defendant as the man who robbed her.

Thomas Schiave and Joseph Cantafio were walking down the alley towards the parking lot behind Field's with Donald Rubino at about 5 p.m. on the date of the incident. They observed Caira screaming that she had been robbed. After Caira indicated that defendant, who was walking toward his car, was the robber, the three men started to chase after him. Defendant entered his car and started to drive away. Later, both Schiave and Cantafio described the car that the robber drove away in as being an old white car with a rear license plate reading VY 39. The rear license plate was hanging off. When defendant started to drive away, the three men continued to pursue him. Schiave and Cantafio testified that the lighting in the parking lot and along the alley was very good. Schiave

testified that as defendant walked to his car, defendant turned sideways and looked toward Schiave. Cantafio testified that when he was approximately five to 10 feet from defendant's car, he looked inside the car and could see the whole side of defendant's face.

Schiave and Cantafio both testified that about 20 minutes later they went to the Oak Park Police Station, where both observed the same white car that had been in the alley near Field's parking lot and in which defendant had driven away. Both also viewed a lineup consisting of three men, and both identified defendant as being the man whom they had observed driving the white car. Cantafio had testified at the preliminary hearing on February 11, 1974, that neither of the men other than defendant who participated in the lineup wore hats. He then corrected himself and testified that all the men in the lineup wore hats. Both Schiave and Cantafio also made positive in-court identifications of defendant.

Responding to a radio call at about 5 p.m. on December 24, 1973, two Oak Park police officers arrested defendant within approximately two miles of Field's. Defendant was driving an older model white automobile. The car's license plate began with the numbers VY 39.

Defendant made a motion in limine to preclude the State from bringing out on cross-examination any prior criminal convictions. Defendant had been convicted of robbery on July 17, 1967, and sentenced to a term of from 1 to 3 years imprisonment. Defendant had been discharged from imprisonment on June 20, 1968. He was charged with the present offense of armed robbery on December 24, 1973. Trial commenced on February 7, 1978. On February 10, 1978, the trial court permitted the State to introduce evidence of defendant's prior conviction for robbery.

Defense counsel also made a motion to suppress the in-court identifications of defendant made by Caira, Schiave and Cantafio, arguing that the lineup was improperly conducted.

Defendant testified that on December 24, 1973, he had gone for gasoline; he was unable to get any and, as he was returning home, he was stopped and arrested by the police. During direct examination, defense counsel asked defendant, "Up to the time that you got to the station had either of the officers asked you if you committed a robbery?" Defendant responded, "No. They did not. They told me I committed a robbery." Defendant testified that he was taken into a room at the police station and that at that time he asked "what [he] was being held on." An officer responded that "you know you stuck up the lady." Defendant responded "what lady and where?" Defendant stated that he was never asked if he committed the offense. Defendant responded in the negative when defense counsel asked him if he had committed the crime. Defendant testified that he was the only participant in the lineup wearing a hat. During cross-examination, defendant was questioned about whether prior

to trial defendant had told anyone what he was doing the night the robbery occurred.

During closing argument, defense counsel stated that "* * * [defendant] told you and the officer told you that they never asked him if he did it * * * the detective never asked him if he did it [nor was he asked] where is the money." In rebuttal, the assistant State's attorney commented that defendant was trying to create an inference that defendant did not have an opportunity to tell anyone his story prior to trial. Defendant objected and the court overruled the objection, ruling that the comment was a fair inference from the record.

The assistant State's attorney also stated during closing argument that "* * * first of all the evidence proves that [defendant] is a professional robber. He acts like a professional robber." Defendant objected. The State responded that "I am discussing the physical evidence that took place on December 24, 1973." The court overruled the defendant's objection. The State further argued that defendant used a gun and a car which could not be traced to him.

Defendant's motion to suppress the in-court identifications made by Caira, Schiave and Cantafio was denied. The court held that even if the lineup was unduly suggestive, the identifying witnesses' testimony as to their initial confrontation with defendant had an independent origin.

The jury found defendant guilty of armed robbery. Defendant's motion for a new trial was denied and defendant was sentenced to a term of from 4 to 6 years.

Defendant, a black, first contends that the trial court erred when it refused to conduct an evidentiary hearing for the purpose of determining whether defendant was denied his right to an impartial jury because four prospective jurors, who were black, were dismissed from jury service through the State's exercise of peremptory challenges.

In *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, defendant argued that he was denied equal protection of the law by discrimination in the selection of jurors from the veniremen, demonstrated by the fact that the prosecutor exercised his peremptory challenges to remove all blacks from the jury panel. The United States Supreme Court held that where there is no showing of a systematic pattern, over time, of the exclusion of a particular racial group from sitting on juries, a prosecutor's motives may not be inquired into when he excludes members of that group from sitting on a particular case by the use of peremptory challenges. The court stated (380 U.S. 202, 222, 13 L. Ed. 2d 759, 773-74, 85 S. Ct. 824, 836):

> "In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution

requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it."

The record in this case indicates that the first prospective black juror stated during *voir dire* that in 1969 he was a defendant in an assault and battery case. Defendant's contention that the State exercised a peremptory challenge against this juror solely because he was black is without merit because it also is possible he was dismissed because of his experience as a defendant in a criminal case. The second prospective black juror was dismissed after the State exercised a peremptory challenge against him. Defendant contends this juror was dismissed solely because he was black, noting that the State did not ask any questions of him. We cannot conclude that, because the State did not question the prospective juror before exercising a peremptory challenge against him, the State's sole motivation for excluding him from the jury was because he was a black. After the second prospective black juror was excused and before further *voir dire*, the court reporter was excused. Subsequently, two other prospective black jurors were dismissed by the State with peremptory challenges. No systematic pattern over time of exclusion of blacks from sitting on juries has been demonstrated in this case relying either on the facts of this case or on facts presented on a broader base than this case alone. We find that defendant has not overcome the presumption that the prosecutor was using his peremptory challenges to obtain a fair and impartial jury.

Defendant argues, however, that the State's exercise of its peremptory challenges against the only four blacks among the veniremen violated defendant's right to a fair and impartial jury, relying upon the opinion of the Supreme Court of California in *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890. In *Wheeler*, the exercise of peremptory challenges in a criminal case based solely on group affiliation was held to violate the California state constitutional right to trial by a jury drawn from a representative cross-section of the community. *Wheeler* allows a defendant to establish a *prima facie* case of discrimination and shift the burden to the State upon a showing (22 Cal. 3d 258, 280, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905):

"First, * * * he should make as complete a record of the circum-

stances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias."

If a court finds that a *prima facie* case of discrimination has been established, the State must then show that the motivation for the strikes was not group bias.

We agree with the Wisconsin Court of Appeals that "the test proposed by the California court is vague and uncertain, and severely limits the scope of peremptory challenges. If peremptory strikes can only be exercised in a certain way, dependent on circumstances, and subject to judicial scrutiny, they will no longer be peremptory. We refuse to undertake such an alteration of the very nature of the peremptory system." *State v. Grady* (1979), 93 Wis. 2d 1, 13, 286 N.W.2d 607, 612. See also *State v. Stewart* (1979), 225 Kan. 410, 591 P.2d 166 (where the court refused to apply the *Wheeler* reasoning). But see *People v. Kagan* (1979), 101 Misc. 2d 274, 420 N.Y.S. 2d 987 (where the court adopted the reasoning of *Wheeler*, but found that in the case before it it was not shown that the prosecutor was systematically excluding members of the Jewish faith from the jury), and *Commonwealth v. Soares* (1979), ___ Mass. ___, 387 N.E.2d 499, *cert. denied* (1979), 444 U.S. 881, 62 L. Ed. 2d 110, 100 S. Ct. 170 (where the court adopted the *Wheeler* court's reasoning). But see also *State v. Eames* (La. 1978), 365 So. 2d 1361 (concurring opinion) (where three of the seven justices on the Louisiana Supreme Court took the position that the State Constitution of Louisiana afforded its citizens greater protection against invidious peremptory challenges than the minimum required of a State by the fourteenth amendment as interpreted by the Supreme Court in *Swain v. Alabama* and, although these justices did not disagree with the *Wheeler* court's analysis, they found it unnecessary to rely on the impartial jury guarantee or its attendant representative cross-section rule), and *State v. Crespin* (1980), ___ N.M. App. ___, 612 P.2d 716 (where the court found the case before it was controlled by *Swain v. Alabama,* but stated that the procedure suggested in *Wheeler* was helpful).

Further, in *People v. Harris* (1959), 17 Ill. 2d 446, 161 N.E.2d 809, *cert. denied* (1960), 362 U.S. 928, 4 L. Ed. 2d 747, 80 S. Ct. 755, defendant argued that he was deprived of due process and equal protection of the law because the State exercised its peremptory challenges so as to systematically exclude blacks from the jury. The court stated (17 Ill. 2d 446, 451):

"* * * The fact that the State's exercise of peremptory challenges resulted in excluding them [blacks] from the petit jury did not

deprive defendant of any constitutional right. [Citation.] The right of peremptory challenge is a substantial one which should not be abridged or denied. It may, by its very nature, be exercised or not exercised, according to the judgment, will or caprice of the party entitled thereto, and he is not required to assign any reason therefor. [Citation.]"

Identical contentions were made by the defendants in both *People v. Thornhill* (1975), 31 Ill. App. 3d 779, 333 N.E.2d 8, and *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448. Both cases relied on *People v. Harris* and found that because peremptory challenges may be exercised without explanation or without being subject to control by the court, it could not be said that the State exercised its peremptory challenges improperly.

Defendant argues that the State's exercise of its peremptory challenges in this case violated defendant's right to an impartial jury guaranteed by the sixth amendment to the Federal Constitution and article 1, section 8 of the Illinois Constitution. We disagree.

In *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, the court reversed a State conviction of a male defendant on the ground that women had, in effect, been totally excluded from jury service. The court held that the "exclusion of women from jury venires deprives a criminal defendant of his Sixth Amendment right to trial by an impartial jury drawn from a fair cross section of the community." (419 U.S. 522, 535-36, 42 L. Ed. 2d 690, 701, 95 S. Ct. 692, 700.) We decline to extend this holding to rule, as defendant asks, that peremptory challenges may not be exercised to exclude members of social groups, not only from jury pools but also from jury service. See Note, 89 Yale L.J. 1177 (1980).

"The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." (*Swain v. Alabama* (1965), 380 U.S. 202, 220, 13 L. Ed. 2d 759, 772, 85 S. Ct. 824, 836.) There is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor v. Louisiana* (1975), 419 U.S. 522, 538, 42 L. Ed. 2d 690, 703, 95 S. Ct. 692, 702.

■■ Because we do not agree that in order to insure an impartial jury peremptory challenges can only be exercised in a limited way, we reject defendant's contention that the State's exercise of its peremptory challenges here violated defendant's right to an impartial jury guaranteed by the sixth amendment to the Federal Constitution and article 1, section 8, of the Illinois Constitution.

Although we refuse to adopt the reasoning of the *Wheeler* opinion, we note that even under *Wheeler* the State's use of its peremptory challenges in this case was not error because no *prima facie* case of dis-

crimination was established. *Wheeler* first requires that a record of the circumstances should be made which is as complete as is feasible. Here, after the State exercised two of its peremptory challenges against prospective black jurors, the court reporter was dismissed. No record of the circumstances surrounding the State's exercise of its peremptory challenges against the other two prospective black jurors exists. *Wheeler's* second requirement that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule is met here because the persons allegedly excluded were blacks. However, *Wheeler's* third requirement to establish a *prima facie* case of discrimination that all the circumstances of the case show a strong likelihood that such persons are being challenged because of their group association, rather than any specific bias, is not met here. There has been no showing of a strong likelihood that the persons excluded through the State's use of its peremptory challenges was because of their group association. As previously noted, the first prospective black juror had once been a defendant in an assault and battery case. This fact could very well have motivated the State to exercise a peremptory challenge against him. Although the second prospective black juror was dismissed by the State without being asked any questions by the State, we cannot say that the State exercised a peremptory challenge against that prospective juror because he was black. As to the final two prospective black jurors against whom the State exercised peremptory challenges, there being no court reporter present to record the proceedings, no record of the circumstances surrounding the State's exercise of its challenges exists and we cannot conclude that such challenges were exercised solely because the prospective jurors were blacks.

We find that there was no systematic pattern, over time, of the exclusion of blacks from sitting on juries demonstrated in this case and that defendant did not overcome the presumption that the prosecutor was using his peremptory challenges to obtain a fair and impartial jury. We refuse to adopt the rationale of *Wheeler* and further conclude that even if we were to adopt *Wheeler's* rationale, defendant in this cause failed to establish a *prima facie* case of discrimination necessary to shift the burden to the State to show that motivation for the strikes was something other than group bias.

Defendant's second contention is that the trial judge erred in allowing the State to present evidence of defendant's 1967 robbery conviction because the conviction was 10 years old, was for the same offense for which defendant was now on trial and was defendant's only prior conviction. The State argues that this issue was waived when it was not raised in defendant's written motion for a new trial. We need not consider the issue of waiver because we reject defendant's contention on its merits.

In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, our supreme court adopted a draft of Rule 609 of the Federal Rules of Evidence. That rule stated in pertinent part:

> " '(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.
>
> '(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date.' " 47 Ill. 2d 510, 516.

The trial judge is given wide latitude in determining whether the probative value of prior convictions outweighs any unfair prejudice to a defendant. *People v. Montgomery*; *People v. Ridley* (1975), 25 Ill. App. 3d 596, 323 N.E.2d 577.

■■ Defendant was discharged from the penitentiary for the prior conviction on June 20, 1968. The trial for the present offense commenced on February 7, 1978, and the jury found defendant guilty on February 15, 1978. Because defendant was released from confinement less than 10 years from his present trial and conviction and because robbery is a felony, the 1967 robbery conviction was admissible for the purpose of attacking defendant's credibility unless the probative value of the evidence of the crime was substantially outweighed by the danger of unfair prejudice to defendant. The various factors to be considered in making this determination include "the nature of the crime, nearness or remoteness, the subsequent career of the person, and whether the crime was similar to the one charged." (*People v. Montgomery* (1971), 47 Ill. 2d 510, 518, 268 N.E.2d 695, quoting *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936.) Robbery is a crime which relates directly to credibility (*People v. Ridley* (1975), 25 Ill. App. 3d 596, 323 N.E.2d 577), and defendant's conviction for that crime is within the 10-year rule. Although defendant's 1967 conviction for robbery was his only conviction until his conviction in the present case, this fact does not warrant the conclusion that the trial court abused its discretion in admitting evidence of defendant's prior conviction.

Defendant argues that because the crime of robbery is similar to the crime of armed robbery the possibility of prejudice to defendant was

great if evidence of defendant's prior conviction were admitted. We do not agree. A prior conviction for a crime which is similar to the crime now charged does not mean it cannot be introduced. (*People v. Dee* (1975), 26 Ill. App. 3d 691, 325 N.E.2d 336.) The jury would not have found it difficult to limit consideration of the prior conviction to the issue of defendant's credibility because the length of time between the prior conviction and the offense for which defendant was on trial and the absence of any other convictions for robbery or armed robbery would militate against a conclusion that if defendant committed a robbery before, he probably committed the robbery for which he is now on trial.

Defendant further argues that defendant was prejudiced when the assistant State's attorney referred to defendant as a professional robber and outlined the evidence to show that this was a valid characterization of defendant. Defense counsel's objection to the comment was overruled after the assistant State's attorney stated that he was discussing the evidence concerning the crime for which defendant was then on trial.

■■ Comments by the prosecutor upon relevant evidence in the record or legitimate inferences deducible therefrom are not improper. (*People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537; *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658; *People v. Gunner* (1979), 73 Ill. App. 3d 533, 392 N.E.2d 165.) However, it is improper for the prosecutor to suggest that a defendant has been engaged in other criminal activity for which he is not on trial. (*People v. Thomas* (1974), 22 Ill. App. 3d 854, 318 N.E.2d 342; *People v. Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577.) We find that was not the case here; the assistant State's attorney's comments emphasized the professional nature of only this robbery. The comments did not concern other crimes or support an inference of other crimes, but rather were based on the evidence adduced at trial and constituted fair inferences from the evidence. See *People v. Cox* (1979), 71 Ill. App. 3d 850, 389 N.E.2d 1238.

■■ We find that the trial court did not abuse its discretion in determining that the probative value of defendant's prior conviction outweighed any unfair prejudice to defendant and the conviction was properly admitted for impeachment purposes. We also find that defendant was not prejudiced by the assistant State's attorney's comments characterizing him as a professional robber.

Defendant's third contention is that the trial court erred in not suppressing the in-court identifications made by Caira, Schiave and Cantafio. He argues that the in-court identifications were unreliable because they were based on an unduly suggestive lineup.

Defendant did not challenge the identification testimony of the

witnesses prior to trial and the State asserts that the issue is therefore waived. Because we find that defendant's contention is without merit, we need not determine whether the issue has been waived.

■■ In order to be entitled to suppress identification testimony, the burden is on the defendant to prove that the pre-trial procedures were so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. (*People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 728; *People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152; *People v. Harrison* (1978), 57 Ill. App. 3d 9, 372 N.E.2d 915.) However, assuming a defendant carries this burden, the State may introduce the identification testimony after a clear and convincing showing based on the totality of the surrounding circumstances that " 'the witness is identifying the defendant solely on the basis of his memory of events at the time of the crime.' " (*People v. McTush* (1980), 81 Ill. 2d 513, 520, quoting *Manson v. Brathwaite* (1977), 432 U.S. 98, 122, 53 L. Ed. 2d 140, 159, 97 S. Ct. 2243, 2257, (dissenting opinion of Marshall, J.).) After a careful review of the record in this case, we find that defendant has not met the burden of proving that the pretrial procedures were so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.

■■ Defendant argues that the lineup was suggestive because he was the only participant in the lineup wearing a hat. Although defendant testified he was the only participant in the lineup wearing a hat, other witnesses testified to the contrary. However, even if we accept defendant's version of the facts, we do not find that the lineup was unduly suggestive and conducive to irreparable mistaken identification.

Defendant also argues that a policeman's statement to Caira shortly after the incident, "we have him, we arrested him," rendered the lineup unduly suggestive. We do not agree.

Furthermore, even if the pretrial procedures here were unduly suggestive, the in-court identifications of defendant by Caira, Schiave and Cantafio were admissible because each of the three identifications was based on an independent origin. *People v. Patrick* (1972), 53 Ill. 2d 201, 280 N.E.2d 227; *People v. Harris* (1970), 46 Ill. 2d 395, 263 N.E.2d 35; *People v. Huffman* (1980), 81 Ill. App. 3d 901, 401 N.E.2d 1211; *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.

■■ All three witnesses testified that the lighting in the parking lot and along the alley was very good. Caira testified that the dome light went on when she opened the door of her automobile. She testified that when defendant first spoke to her his face was about one foot from her face and that throughout the incident she was looking directly at defendant. Schiave testified that he observed defendant walk to his car after leaving

Caira's car and that defendant turned sideways and looked toward Schiave. Cantafio testified that when he was approximately 5 to 10 feet from defendant's car, he looked inside the car and could see the whole side of defendant's face. Considering the totality of circumstances, even assuming the lineup here was unduly suggestive and conducive to irreparable mistaken identification, we find that because there was sufficient independent origin for each of the three in-court identifications of defendant, no error was committed in denying defendant's motion to suppress the evidence of the three in-court identifications.

Defendant's final contention is that his right to remain silent was violated when the State was allowed to cross-examine defendant about not having told his story to anyone before trial and where the assistant State's attorney commented on this testimony during closing argument.

■■ We have examined the objected-to cross-examination and comments and find they were a legitimate response to a subject opened by defendant's testimony on direct examination; but, even if they were error, it was harmless beyond a reasonable doubt. (See *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Three witnesses positively identified defendant as the person who committed the offense. Defendant was arrested within two miles of the scene of the crime minutes after its commission driving a car that fit the description three witnesses gave of the car in which the perpetrator fled. Police found a gun under the seat of defendant's car and Caira identified this weapon as the gun used during the commission of the robbery.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.