THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN LAVINDER, Defendant-Appellant.

First District (4th Division)    No. 80-1842

Opinion filed December 17, 1981.—Rehearing denied January 19, 1982.

JOHNSON, J., dissenting.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Warren A. Zimmerman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Melvin Lavinder, was found guilty of armed robbery and attempted murder (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2, 8—4, 9—1). Defendant was sentenced to concurrent prison terms of 25 years for each conviction. A codefendant, Larry Johnson, was found not guilty.

Defendant appeals, contending reversible error occurred in that (1) the prosecution's peremptory challenge of all six black prospective jurors in the venire was constitutionally improper; (2) there was no probable cause for defendant's arrest; and (3) the accumulation of other trial errors,

including the prosecutor's asking a question intended to elicit hearsay testimony, and admission of testimony that suggested defendant had committed another crime, denied him a fair trial.

We affirm.

## FACTS

The complaining witness, Richard Reges, testified that at about 1:30 a.m. on June 16, 1979, he parked his car across the street from his house in Calumet City, Illinois. As he walked toward his house, the defendant, a black man, ordered him to turn around, pointed a pistol at his chest, and demanded his wallet and change. Reges complied with defendant's demands. Defendant then ran to a car parked down the street, fired a shot at Reges, and jumped into the passenger side of the car, which was driven away by another man.

Reges got into his car and gave chase. The defendant fired twice more at Reges during the chase. One shot struck the headlight of Reges' car and the other struck the windshield. Glass from the broken windshield lodged in Reges' eye, but did not seriously injure him.

The auto chase ended at 130th Street near Torrence Avenue, where Chicago police were disbursing a crowd at a drag race. Reges alerted one of the officers in a squad car, pointed to defendant's car in front of him, and told the officer, "Those guys up there just shot me." The police officer got out of his squad car, and as he did so defendant and his companion got out of their car and ran into the crowd. Shortly thereafter, an unidentified spectator at the drag race approached the police officer and told him that the two men he was chasing had got into another car belonging to the spectator's friend. The police officer radioed an alarm, and within a few minutes defendant and his companion were apprehended. They were taken to a nearby police station. At a lineup, Reges identified defendant as his assailant.

The police found a fully cocked revolver in the automobile from which defendant and his companion had run at 130th and Torrence. The revolver contained three live rounds and three spent casings. Defendant's fingerprints were lifted from the left outside mirror of the car. The keys to the car had been found in the back seat of the second car, in which defendant and his companion were arrested. In due course, defendant was charged.

During jury selection, the State exercised peremptory challenges against all six black persons in the group of prospective jurors. The State peremptorily excused only one white prospective juror. Defense counsel moved to strike the entire venire "based on the fact that the two State's Attorneys systematically used their peremptory challenges to excuse all the blacks from the panel." Defense counsel asserted that the State's use of

peremptory challenges against all black persons who were prospective jurors was constitutionally impermissible and denied defendant, a black person, a fair jury trial. Defense counsel identified for the record the black prospective jurors who had been peremptorily challenged by the State. After the State's denial that it was engaged in selective and systematic exclusion of blacks, the trial court denied defense counsel's motion to strike the venire. Jury selection was completed, and the trial proceeded.

OPINION

I

Defendant first argues that he was effectively denied his constitutional right to a fair jury trial. Defendant urges that while there is a presumption that in the jury selection procedure the State's peremptory challenges were exercised in a constitutionally permissible manner, the record of the selection process made by defense counsel rebuts that presumption. After the six black prospective jurors in the venire were struck by the State, defense counsel made a motion to strike the venire based on the State's use of peremptory challenges to excuse all the blacks from the panel. He then stated for the record that defendant is black and the victim is white. Counsel named all the blacks excused by the State, claiming they were struck on the sole basis of race. Defendant argues that the burden was thus shifted to the State to demonstrate that the black prospective jurors were not challenged improperly because of "group affiliation." Defendant contends that this burden was not met by the State, which made no showing of its reasons for excusing these prospective jurors, and that consequently his conviction should be reversed.

Defendant's argument is based primarily on a decision of the Supreme Court of California, *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P. 2d 748, 148 Cal. Rptr. 890. *Wheeler* held that the use of peremptory challenges on the sole ground of group affiliation violated the California State constitutional right to a jury drawn from a representative cross-section of the community. Under *Wheeler*, where a defendant believes the State is using its peremptory challenges to strike jurors on the ground of group bias alone, he must make out a prima facie case of such discrimination as follows:

> "First, * * * he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group * * *. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (22 Cal. 3d 258, 280, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905.)

The California court listed as relevant evidence to establish the foregoing

the fact that the State peremptorily struck most or all of the members of the group in question (blacks); used a disproportionately large number of peremptory challenges against the group; or asked group members few or no questions during voir dire. Other relevant factors are that the only common characteristic of the challenged jurors was their group membership, that the defendant was a member of the excluded group, and that the victim was a member of the same group as the majority of the jurors.

Under *Wheeler*, where the defendant makes a prima facie showing of discriminatory use of the peremptory challenge, the burden then shifts to the State to rebut it. If the prosecution fails to rebut the defendant's showing, a new jury must be selected. Because the defendant in *Wheeler* was convicted by a jury which the court regarded as tainted by the process of its selection, the judgment of conviction was reversed and the case was remanded for a new trial.

Defendant Lavinder asks us to reverse his conviction on the same basis, that is, that he was convicted by a jury which was improperly selected. He points out that in *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117, this court discussed *Wheeler* with approval. In *Smith*, however, the evidence of purposeful exclusion of jurors was held to be insufficient to warrant reversal, and *Smith* therefore does not bind us to follow *Wheeler*. We also note that in *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330, another division of this court expressly refused to adopt the reasoning of the *Wheeler* opinion.

In *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, the United States Supreme Court refused to reverse the conviction of a black petitioner who was tried before an all-white jury, even though the prosecutor had used peremptory challenges to strike all six black prospective jurors on the venire. The court there said that "a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him * * *." (380 U.S. 202, 208, 13 L. Ed. 2d 759, 766, 85 S. Ct. 824, 829.) The court went on to define the peremptory challenge and discuss its interaction with a defendant's right to equal protection of the laws:

> "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. * * * It is * * * frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. * * *
>
> [W]e cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and

Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto*, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity." 380 U.S. 202, 220-22, 13 L. Ed. 2d 759, 772-73, 85 S. Ct. 824, 836-37.

The Illinois Supreme Court has held that *Swain* is dispositive of a complaint that the State used peremptory challenges to exclude blacks from a jury. (See *People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731.) We also note that although this court has discussed *Wheeler* in dictum (see, *e.g., People v. Smith* and *People v. Fleming*), it has been unable, in view of *People v. King*, to adopt *Wheeler's* holding or its rationale. In both *People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029, and *People v. Vaughn* (1981), 100 Ill. App. 3d 1082, the precise peremptory challenge issue was not reached because the record of voir dire was incomplete.

■■ We find it significant that the California court expressly based its decision in *Wheeler* on the defendant's right to trial by an impartial jury under the aegis of the California *State* constitution: " '[O]ur first referent is California Law' and divergent decisions of the United States Supreme Court 'are to be followed by California courts only when they provide no less individual protection than is guaranteed by California law.' [Citations.] It is apparent that *Swain* provides less protection to California residents than the rule we now adopt." (22 Cal. 3d 258, 285, 583 P.2d 748, 767, 148 Cal. Rptr. 890, 908.) However, in the case before us we conclude that to protect a defendant's right to a fair trial, the Constitution of the State of Illinois does not direct or require us to go beyond the holding in *Swain*.

The *Wheeler* court said it recognized that a litigant has no right to a jury which is a perfect cross-section of the community, or which includes members of his own group. It said its holding did not mean that members of that group were immune from peremptory challenges. But the *Wheeler* court also stated that individual members of the group may only "be struck on grounds of *specific bias*" (emphasis added) (22 Cal. 3d 258, 277, 583 P.2d 748, 762, 148 Cal. Rptr. 890, 903), which appears to us to mean that group members may be struck only *for cause*. The *Wheeler* court thus reached the precise result the United States Supreme Court deliberately avoided in *Swain*: It produced a radical change in the nature and operation of the peremptory challenge, rendering it in fact no longer peremptory and opening to scrutiny for reasonableness and sincerity the

prosecutor's judgment in the exercise of each challenge. See 380 U.S. 202, 221-22, 13 L. Ed. 2d 759, 773-74, 85 S. Ct. 824, 836-37.

Indeed, the *Wheeler* court paradoxically stated that while a California statute defines a peremptory challenge "as one for which 'no reason need be given' * * * it does not follow therefrom that it is an objection for which no reason need *exist*." (22 Cal. 3d 258, 274, 583 P.2d 748, 760, 148 Cal. Rptr. 890, 901.) The court further assumed that this unexpressed reason will be some kind of bias on the part of the prospective juror, and finally decided that some types of bias (specific bias) are acceptable grounds for the exercise of a peremptory challenge, while other types (group bias) are not. We would conclude that the *Wheeler* court intended to do away with the peremptory nature of the peremptory challenge:

> "The hyperbole of certain earlier opinions—e.g., that peremptory challenges may be invoked 'upon the mere whim or caprice' of the parties [citation]—should be reconsidered in the light of these pragmatic imperatives." 22 Cal. 3d 258, 275 n.15, 583 P.2d 748, 760 n.15, 148 Cal. Rptr. 890, 901 n.15.

In addition, we find *Wheeler's* discussion of the defendant's right to a jury drawn from a representative cross-section of the community misleading in that it applies standards to the selection of a petit jury which the United States Supreme Court has held are applicable to the selection of a jury *pool* or venire. *Wheeler* cites *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, as the most recent case of this type. *Taylor* holds that the sixth amendment guarantee of an impartial jury trial in criminal cases requires the presence of a fair cross-section of the community "on venires, panels, or lists from which petit juries are drawn * * *." (419 U.S. 522, 526, 42 L. Ed. 2d 696, 95 S. Ct. 692, 696.) However,

> "It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries *actually chosen* must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition * * *." (Emphasis added.) 419 U.S. 522, 538, 42 L. Ed. 2d 696, 702, 95 S. Ct. 692, 702.

Justice Richardson's dissent in *Wheeler* analyzes the difficulty with the majority's effort to achieve impartiality and avoid bias in the jury selection system:

> "The majority repeatedly refuses to recognize the established distinction between the jury venire and the petit jury. It attempts to render synonymous the terms 'representative' and 'impartial' insisting that the true guarantor of impartiality is a mixing of representative groups 'so that the respective biases of their members, to the extent they are antagonistic, will tend to cancel each other

out.' (*Ante*, pp. 266-267.) I totally, and fundamentally, disagree that this is either the function or the goal of the jury selection process.

Dissension, to the extent that it reflects only a clash of the 'respective biases' of individual jurors, is no guarantee whatever of impartiality. Impartiality is not assured by balancing 'biases.' " 22 Cal. 3d 258, 292, 583 P.2d 748, 771, 148 Cal. Rptr. 890, 913.

Additionally, we note that the recent case of *People v. Fleming* (1980), 91 Ill. App. 3d 99, 105, 413 N.E.2d 1330, 1334, quotes *State v. Grady* (1979), 93 Wis. 2d 1, 13, 286 N.W.2d 607, 612:

"[T]he test proposed by the California court is vague and uncertain, and severely limits the scope of peremptory challenges. If peremptory strikes can only be exercised in a certain way, dependent on circumstances, and subject to judicial scrutiny, they will no longer be peremptory. We refuse to undertake such an alteration of the very nature of the peremptory system."

We agree with this analysis. As the United States Supreme Court in *Swain* observed, prospective jurors are not judged solely as individuals. A peremptory challenge traditionally may be based on whatever limited knowledge counsel has of each venire-person, including that person's background and associations. Assumptions predicated on such factors may be correct as applied to an individual juror, or they may be wrong. Counsel's responsibility to his client is to make the best assessment possible based on whatever information is available. We feel the wiser policy is to decline to interfere with counsel's right to strike a specified number of prospective jurors based on any factors he considers important, rather than to specify certain circumstances in which peremptory challenges may not be exercised, or certain factors on which they may not be based. In view of the foregoing, we do not find merit in the defendant's contention that the peremptory challenges by the prosecution in the case before us were exercised in a manner that was constitutionally impermissible.

## II

■■     The defendant next argues that there was no probable cause for his arrest where an unidentified spectator at a drag race gave police "a mere general description of a car containing * * * male Negroes." He claims that his arrest was illegal since it was "prompted by" a tip from this citizen-informer, who refused to give his name and address to the police, and who disappeared after giving his information instead of remaining available in case he was needed. Defendant relies upon the citizen-informer rule set forth in *People v. Martin* (1977), 46 Ill. App. 3d 943, 361 N.E.2d 595. The rule provides that the police, to have a reasonable basis

upon which to make an arrest, must be aware of the person's status as a citizen-informer, and that the citizen-informer must furnish underlying facts which indicate a crime has been committed and the named suspect committed it.

The defendant fails to explain why he assumes this rule applies to the unidentified spectator in this case who told a policeman where the men he was chasing had gone. We find that the rule in fact does not apply to the spectator here, who merely furnished information about the whereabouts of persons whom he had seen being pursued by a police officer. This spectator did not identify defendant as a criminal suspect, and defendant's arrest was based on information the man provided only in that he might otherwise have escaped police pursuit.

■■ The precise opposite of what defendant argues actually occurred in this case. The spectator did not inform the police that defendant was suspected of committing a crime; the policeman informed the spectator of that fact by his actions in pursuing the defendant. The arrest was founded on information provided by the victim, Reges, who approached the police, pointed out defendant and his companion, and said he had been robbed and shot at. The defendant makes no complaint about the information given by Reges, and we find that this was the information which established probable cause for the arrest. The citizen-informer rule has no application here.

### III

■■ Finally, defendant argues that an accumulation of other errors at trial denied him a fair trial. Defendant complains, for example, that after defense counsel objected to the police officer's effort to testify to what the unidentified spectator at the drag race had told him and the objection was sustained, the State later asked what the spectator had said. The court again sustained defense counsel's objection to the hearsay testimony. While it was improper for the prosecutor to ask the officer to repeat a statement to which an objection had already been sustained, no improper hearsay evidence was presented to the jury and we do not find that the alleged error was prejudicial to defendant.

■■ Defendant also argues that the trial court erred in admitting testimony from the owner of the car which defendant and his companion abandoned at the scene of the drag race. Defendant claims that the assertion of ownership by that witness suggested that defendant stole the car and thus was guilty of another crime. Defendant claims he was prejudiced thereby. However, the State points out that this testimony was needed to disprove the possibility that the owner, and not defendant and his companion, had abandoned the car at 130th and Torrence. While the State's reasoning is somewhat tenuous, we nonetheless find the error, if any, to be harmless in

view of the overwhelming evidence of defendant's guilt. See, *e.g., People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340; *People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766.

We have reviewed defendant's claims of other errors and find them to be lacking in merit.

For all of the reasons discussed above, the defendant's convictions are affirmed.

Affirmed.

JIGANTI, J., concurs.

JUSTICE JOHNSON, dissenting:

I respectfully dissent and would base my reversal on the peremptory challenge issue.

The majority discusses *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890, but refuses to apply the procedures employed by *Wheeler*. They maintain that *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, is controlling. The majority cites *People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731, as standing for this proposition. However, *King* does not suggest or maintain that Illinois cases dealing with the issue of peremptory challenges are to be governed by *Swain* exclusively. Further, the majority summarily dismisses the *Wheeler* decision by urging that the Constitution of the State of Illinois does not direct or require us to go beyond the holding of *Swain*.

I cannot agree with this analysis. In order to establish a *prima facie* case under *Swain*, the defendant must show a systematic striking of blacks from the selection of juries over a period of time. In practice, this task has proved to be insurmountable for the defendant. (See *Commonwealth v. Soares* (1979), 377 Mass. 461, 387 N.E.2d 499.) Consequently, there have been few, if any, cases that have overcome the *Swain's* systematic exclusion test. The *Wheeler* court recognized the inadequacies of *Swain* and refused to apply the systematic exclusion test. I agree with the procedures employed by *Wheeler*, and I would use those procedures in this case. The record reveals that the prosecutor struck all six black jurors from the panel without a satisfactory explanation. Under *Wheeler*, once improper use of the peremptory challenge is alleged, as in this case, the burden shifts to the prosecution to rebut or explain. Since the prosecutor offered no satisfactory explanation, the State failed to meet its burden; therefore, a new jury should have been selected.

As was stated in *People v. Smith* (1980), 91 Ill. App. 3d 523, 532, 414 N.E.2d 1117, 1124, "[w]e abhor and condemn the practice of the use of the peremptory challenge to strike all blacks from a jury." *Smith* also

672

indicated that where purposeful exclusion has been shown, as in this case, reversal would be appropriate. Defendant Lavinder has established a *prima facie* case under *Wheeler*; for me, this is sufficient for reversal.