(No. 40826.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN DePOY, Appellant.

*Opinion filed September 24, 1968.*

WARD, J., took no part.

CHARLES R. WINKLER and ANTHONY J. FORNELLI, of Chicago, (HARRY G. FINS, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES R. TRUSCHKE, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

On July 27, 1966, a petition was filed in the juvenile division of the circuit court of Cook County charging that the defendant, John DePoy, was a delinquent minor. (Ill. Rev. Stat. 1965, chap. 37, pars. 701—1-708—4.) The petition resulted from defendant's alleged participation in a teenage gang beating of Robert Gnutek which caused his death. On July 29, 1966, a detention hearing (Ill. Rev. Stat. 1965, chap. 37, par. 703—5) was held in that court in which the court ruled that the seriousness of the charge warranted holding the defendant in custody of the State until his adjudicatory hearing on August 11, 1966. On the latter date the State's request for a continuance was granted, the cause continued to September 29, 1966, and the defendant was released from State custody. On September 29 an associate of defendant's counsel appeared to ask that the case be continued a week or two because defendant's counsel was engaged in the trial of another case. In addition to making a request for a continuance, he asked the court, "Would DePoy be held in custody?" The court indicated that before ruling on the question of custody he wanted to inquire into certain facets of the State's case, and an eyewitness was called who testified that defendant was a member of the gang that had beaten Robert Gnutek. Immediately after hearing this testimony the court stated, "I think we have an adequate amount of evidence", and shortly

thereafter the court inquired, "Are we ready for trial now so we can go for [*sic*] trial?" The prosecutor replied that while the State was prepared, defendant's counsel would not be ready until the following week, and the cause was continued until October 24, 1966, with defendant apparently remaining at liberty. On October 10, 1966, an indictment was returned against DePoy in the criminal division of the Cook County circuit court charging him with the murder of Robert Gnutek. On October 28 the delinquency petition against the defendant was dismissed on the State's motion. Trial on the murder indictment commenced on April 3, 1967, and defendant was found guilty by a jury and sentenced to a term of fourteen to twenty years imprisonment. He appeals that judgment directly to us alleging (1) that since the juvenile division of the circuit court dismissed the delinquency petition after hearing sworn testimony on September 29, 1966, the criminal division had no authority to "re-try" the defendant and that by so doing it violated his constitutional right against twice being placed in jeopardy, (2) that the trial court committed prejudicial error in allowing the prosecution to read to the jury the text of a statement given to police by a State witness inculpating the defendant, after defense counsel during cross-examination had referred to a prior exculpatory statement given to police by the same witness, and (3) that the defendant was not proved guilty beyond a reasonable doubt.

In support of his argument that a minor may not be placed in jeopardy in a criminal prosecution after having been proceeded against in a delinquency proceeding based upon the same conduct, the defendant relies on the recent cases of *In re Application of Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, and *In re Urbasek*, 38 Ill.2d 535, which held that the similarities between criminal prosecutions and delinquency proceedings require that certain constitutional guarantees implicit in the concept of due process apply to

minors in juvenile proceedings at the adjudicatory stage. The defendant also relies on section 702—7 of the Juvenile Court Act which states in pertinent part: "Taking of evidence in an adjudicatory hearing in any such [juvenile delinquency] case is a bar to criminal proceedings based upon the conduct alleged in the petition." It is obvious, however, that defendant cannot invoke this statute or the constitutional prohibition against double jeopardy to prevent a criminal prosecution against him unless he proves that there was a prior adjudicatory proceeding in which he was charged with the commission of acts causing the death of Robert Gnutek, for it is only at the adjudicatory stage that a defendant is placed in jeopardy. "The concept of 'jeopardy' as incorporated in * * * section 3—4(a) of the Criminal Code, and the Federal and State constitutions, requires that the accused be *on trial* for the offense charged; that is, that he be present at a judicial proceeding aimed at reaching a *final determination* of his guilt or innocence of the offense charged." (Emphasis added.) (*People* v. *Chatman,* 38 Ill.2d 265, 270; *People* v. *Laws,* 29 Ill.2d 221, 224.) The defendant contends that when a witness was sworn and gave evidence against him during the juvenile court proceedings on September 29, he was placed in jeopardy and could not thereafter be tried criminally for commission of the same act. We disagree. It is manifest from the question asked by defendant's attorney regarding custody, the judge's inquiries regarding the evidence against defendant, and the judge's question as to whether the parties were "ready for trial", that the hearing which was conducted at that time was solely for the purpose of determining whether defendant should be kept in custody during the period for which a continuance was requested by the defense. Such detention hearing is comparable to a preliminary hearing in a criminal case where evidence is taken to determine whether probable cause exists to hold the accused for grand jury action, and a defendant is in no

manner placed in jeopardy by this action. (*Chatman,* 38 Ill.2d at 270; *People* v. *Watson,* 394 Ill. 177.) Defendant contends that section 704—2 of the Juvenile Court Act requires an adjudicatory hearing to be held in a delinquency proceeding within 10 judicial days from a court order directing detention, and that since a detention hearing had already been held on July 29, the September 29 hearing must have been an adjudicatory proceeding. The record of the September 29 hearing, however, supports no reasonable conclusion other than that it was a detention hearing prompted by the question propounded by defense counsel concerning the defendant's custody thereafter pending trial. This second hearing resulted from the action of defense counsel, and defendant may not now claim as error the course of judicial conduct which he invited. *People* v. *Laws,* 29 Ill.2d 221, 228; *People* v. *Kelley,* 23 Ill.2d 193, 194; *People* v. *Musinski,* 22 Ill.2d 518, 520; *People* v. *Weisberg,* 396 Ill. 412, 429; *People* v. *Ficarrotta,* 385 Ill. 108, 110; *People* v. *Filas,* 369 Ill. 78, 81.

We agree, however, with defendant's contention that it was reversible error to allow the prosecutor to attempt rehabilitation of the credibility of State witness Thomas Sullivan by reading to the jury the text of his written statement to police which contained material claimed to be consistent with his impeached trial testimony. Sullivan testified on direct examination that DePoy had hit the deceased about five times with a board, but he admitted on cross-examination that he did not know "for sure" which of the boys in the group hit Gnutek. During Sullivan's cross-examination he was impeached by his admitted pretrial statement to police which was inconsistent with his trial testimony:

"Q. And isn't it a fact that when Officer Craig asked you to come into the station and instructed you, you told him that John DePoy was not involved in this matter, isn't that correct?

A. Yes, sir.

Q. You told Officer Craig that John DePoy was not involved?

A. Yes, sir."

This was the first mention of any statement by Sullivan to police. On re-direct examination the State brought out the fact that Sullivan had in fact made two statements to police: the first one, referred to by defense counsel during cross-examination, was made on July 17 before Gnutek's death, and it exculpated the defendant from participation in the beating; the second was made on July 27, after the victim's death, and it incriminated the defendant as a major participant. At the close of the State's case the prosecutor was permitted to read the text of the later inculpatory statement to the jury after it had been identified by Sullivan as made by him. Defendant contends this procedure violated his constitutional right to confrontation because the statement was hearsay made out of the presence of the defendant. We agree that it was improper to allow the State to read this statement which contained Sullivan's assertion that defendant had hit the victim "mostly on the head" between 13 and 15 times, but not for the reason that such evidence is "hearsay". The State cites the general principle that "when any part of an oral statement has been put in evidence by one party, the opponent· may afterwards (on cross-examination or re-examination) put in the remainder of what was said on the *same subject at the same time.*" (Wigmore on Evidence (3d Ed.) sec. 2115.) The italicized final words in this statement of a well established rule of evidentiary completeness (*People* v. *Hicks,* 28 Ill.2d 457, 463) emphasize its inapplicability here, for this July 27 statement by Sullivan was made some ten days subsequent to the inconsistent statement of July 17. Consequently, the completeness rule is not relevant in this context. "The rule is well established in Illinois that where a witness has been impeached by showing that he made statements out of court

which contradicted his testimony on the stand, evidence of other previous statements which agree with the witness' testimony are not competent. Reavely v. Harris, 239 Ill. 526; Chicago City Ry. Co. v. Matthieson, 212 Ill. 292." (*Eizerman* v. *Behn,* 9 Ill. App. 2d 263, 283-284.) The reason for this rule which was adopted by this court as early as *Stolp* v. *Blair* (1873), 68 Ill. 541, is that when a witness is impeached by the fact that he has contradicted himself by relating the matter in a different way before trial, the admission of other evidence that he had made a pretrial statement at another time consistent with his testimony shows only that he had been making different statements about the same matter at different times, and this would in no way rebut the evidence of his unreliability which is imported by proof of the prior inconsistent statement. (Annotation, 75 A.L.R. 2d 909, supplementing 140 A.L.R. 21.) And, it may be additionally noted that even the July 27 statement that defendant struck decedent 13 to 15 times is inconsistent with Sullivan's trial testimony that defendant hit decedent about 5 times, and his admission on cross-examination that he was unsure which of the boys hit Gnutek. Not only was this procedure an impermissible attempt by the State to rehabilitate Sullivan's credibility, but the prejudicial nature of the material thus brought before the jury is obvious.

While defendant argues his guilt was not established beyond a reasonable doubt, we believe the proof, if believed by the jury, sufficient to warrant a finding of guilty. The erroneous admission of prejudicial evidence, however, necessitates remandment and retrial.

The judgment of the circuit court of Cook County is accordingly reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.