THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACQUELINE CARTER, Defendant-Appellant.

First District (4th Division)   No. 1—87—1060

Opinion filed August 25, 1988.

Sam Adam, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kathleen Howlett, Special Assistant State's Attorney, and Inge Fryklund and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial, the defendant, Jacqueline Carter, was convicted of possession of a controlled substance and sentenced to a four-year prison term. The court also fined the defendant $26,062 under the Crime Victims Compensation Act (Ill. Rev. Stat. 1985, ch. 70, par. 71 *et seq.*). On appeal, the defendant contends that: (1) certain evidence excluded by the court was admissible as a declaration against penal interest; (2) refusal to grant immunity to a prospective defense witness served to deny the defendant a fair trial; (3) the trial court erred in excusing prospective jurors on the basis of pending traffic tickets; (4) the State was improperly allowed to introduce statements attributable to the defendant which were not disclosed to the defense prior to trial; and (5) the court erred in allowing the jury to render a verdict on a lesser charge, then sending it back to continue deliberations on the greater charge.

The defendant was charged with possession of a controlled substance with intent to deliver after customs officials at O'Hare airport discovered 387 grams of heroin hidden in a laxative container in the defendant's suitcase. The evidence presented by the State showed that at 5:30 p.m. on November 26, 1984, the defendant came to the customs inspection area after arriving on a flight from Germany. Inspector Hillary Gardley testified that he inspected the defendant's passport and noticed that she had entered the United States two weeks earlier. He then asked the defendant general questions such as where she had been, how long she had been away, and her reason for going. When asked if she had been visiting someone in Germany, the defendant replied, "No one." Defense counsel objected to the introduction of this statement on the grounds that the substance of the statement had not been tendered to the defense pursuant to Supreme

Court Rule 412 (87 Ill. 2d R. 412). The trial court denied the objection, apparently on the basis that the State had substantially complied with Rule 412 and the defendant was not prejudiced by the State's use of the statement at trial. Gardley testified that he then carried the defendant's bags to the secondary inspection area and gave them to Inspector Shirley Jordan.

In answer to Jordan's questions, the defendant stated that she had been in Germany for one week, that she had not been visiting friends or family and that she was unemployed. Jordan testified that the defendant's airline ticket had been purchased with cash and that in inspecting the defendant's purse, Jordan found a second airline ticket from Icelandic Air. Jordan then found a tall bottle of Metamucil, a laxative, in the defendant's carry-on bag. Upon tilting it, she noticed that the bottle "felt strange" and asked the defendant to open it. Although a visual inspection revealed nothing unusual, Jordan believed that a further search was warranted and sent the defendant to a search room where she was met by Inspector Doris Kirby.

Kirby probed the Metamucil bottle and heard a "pop" or puncture sound. She then summoned a supervisor who cut the container and discovered a plastic bag containing a substance which tested positive for heroin. Kirby turned the bag over to Detective Tom Kinsella, who was assigned to the Drug Enforcement Administration Task Force at O'Hare airport.

The defendant was advised of her constitutional rights and placed under arrest. Kinsella testified that when he asked the defendant whether she was traveling alone on the flight, she responded that she was traveling with an individual named Richard Benson and gave a physical description of Benson. Later she stated that Benson was not on the flight with her, but rather flew in separately from London to New York and was to meet her at the airport. Kinsella then asked the defendant if Benson knew when her flight was arriving and she stated that he did not know what flight she was on. At that point, Kinsella told the defendant that there were discrepancies in her answers and the conversation ended. Kinsella testified that he subsequently met Richard Benson near the customs area at O'Hare and that Benson identified himself as "Triplett."

Prior to the defendant's case in chief, Richard Benson was called as a witness outside of the jury's presence and declined to answer questions, invoking his fifth amendment right against self-incrimination. At that time, defense counsel requested that the court direct the State to grant Benson immunity so that he could give testimony exculpating the defendant. The court denied the request.

The defendant testified that Richard Benson was her boyfriend and that they decided to take a vacation to Germany. She stated that she had a cousin in the military who was stationed in Germany, that they were very close and that she saw the trip as an opportunity to visit him. However, a few days after arriving in Germany, the defendant began to suffer from constipation and became very ill. She could not find an English-speaking doctor, so she returned to Chicago, where her mother treated her with home remedies. One week after her return, she visited a doctor who prescribed the laxative Metamucil. The defendant returned to Germany that same day to continue her vacation.

The defendant further testified that she returned to Chicago on November 26, 1984, on a separate flight from that of Richard Benson. She stated that she did not put the heroin in the Metamucil bottle and did not know who placed it there. The defendant then attempted to testify concerning a conversation which she had with Benson in the early winter months of 1985. The court sustained a hearsay objection by the State and the defendant made an offer of proof as to the contents of the conversation. The defendant stated that Benson told her that her cousin had placed the heroin in the Metamucil bottle, that Benson knew it had been placed there, that the defendant's cousin told Benson he could make money from the heroin and that Benson was sorry that the defendant had been caught but did not intend to clear her of the charges.

After deliberating for some time, the jury sent a note to the court stating, "We are unanimous on one count. We have not—we are not unanimous on the other. How do we proceed?" At that point the court allowed the jury to render its verdict of guilty on the count of possession of a controlled substance and sent it back to continue deliberations on the greater offense of possession of a controlled substance with intent to deliver. The jury could not reach a verdict on the offense of possession with intent to deliver, and the court declared a mistrial as to that count.

The defendant first contends that the trial court erred in not allowing her to testify as to the conversation in which Richard Benson admitted to her that he was responsible for the heroin found in the Metamucil bottle. She maintains that Benson's out-of-court statement was admissible as a declaration against penal interest.

■ The general rule is that an out-of-court statement by the declarant that he, and not the defendant on trial, committed the crime is inadmissible hearsay even though the statement is against the declarant's penal interest. (*People v. Bowel* (1986), 111 Ill. 2d 58, 66, 488

N.E.2d 995.) However, in *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, the United States Supreme Court held that where the extrajudicial statement is supported by sufficient indicia of trustworthiness, it may be admissible under the declaration against penal interest exception to the hearsay rule. In *Chambers*, the following four factors were found to have established the trustworthiness of the statement at issue: (1) the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and thus against the declarant's interest; and (4) there was an adequate opportunity to cross-examine the declarant. *Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49.

In *People v. Bowel* (1986), 111 Ill. 2d 58, 67, 488 N.E.2d 995, 999, the Illinois Supreme Court stated that the four factors enumerated in *Chambers* "are to be regarded simply as indicia of trustworthiness and not as requirements of admissibility." The court continued, stating that "[t]he question to be considered in judging the admissibility of a declaration of this character is whether the declaration was made under circumstances that provide 'considerable assurance' of its reliability by objective indicia of trustworthiness." (111 Ill. 2d at 67.) Finally, the court stated that the admissibility of such evidence rests within the sound discretion of the trial court.

█ In the case at bar, the trial court stated that Benson's purported out-of-court statement lacked the necessary indicia of trustworthiness to render it admissible under the declaration against penal interest exception to the hearsay rule. In doing so, the court noted that other than the defendant's own testimony there was no evidence to indicate that Benson was even in Germany with her. Also, Benson's purported statement was made months after the occurrence and he was not available for cross-examination because he exercised his fifth amendment right against self-incrimination. Although the Illinois Supreme Court in *Bowel* held that the four factors enumerated in *Chambers* are not "requirements of admissibility," it did state that the declaration must have been made under circumstances which would provide "considerable assurance" of its reliability. We find such circumstances utterly lacking in the case at bar and therefore cannot say that the trial court abused its discretion in excluding the defendant's testimony as to Benson's statement as inadmissible hearsay.

The defendant next contends that the trial court erred in either failing to grant Benson "judicial immunity" or in refusing to compel the State to grant him immunity so that he could offer evidence tend-

ing to exculpate the defendant.

■ ■ It is well established that Illinois courts have no inherent power to grant immunity in order to secure testimony which the defense deems relevant. (*People v. Bracey* (1981), 93 Ill. App. 3d 864, 872, 417 N.E.2d 1029; *People v. Frascella* (1980), 81 Ill. App. 3d 794, 798, 401 N.E.2d 1045.) Rather, the right to grant immunity is a power given to the State by the legislature. (Ill. Rev. Stat. 1987, ch. 38, par. 106—1.) The defendant does not have a constitutional right to compel the State to confer immunity upon a defense witness who has exercised his privilege against self-incrimination. *United States v. Ramsey* (7th Cir. 1974), 503 F.2d 524, 532, *cert. denied* (1975), 420 U.S. 932, 43 L. Ed. 2d 405, 95 S. Ct. 1136.

In support of her argument that the court should have awarded immunity to Benson, the defendant cites *Government of the Virgin Islands v. Smith* (3d Cir. 1980), 615 F.2d 964, in which the Third Circuit Court of Appeals held that a Federal district court may grant immunity where a potential defense witness can offer clearly exculpatory testimony and where the government has no strong interest in withholding immunity. The defendant asserts that Benson's proposed testimony that he was responsible for the heroin found in the defendant's luggage was clearly exculpatory and that the State had no intention of prosecuting Benson.

Our review of the law in this area reveals that the *Virgin Islands* case stands in contrast to the majority of Federal case law on the subject of immunity. For example, in *United States v. Eagle Hawk* (8th Cir. 1987), 815 F.2d 1213, 1217, *cert. denied* (1988), 484 U.S. 1012, 98 L. Ed. 2d 662, 108 S. Ct. 712, the Eighth Circuit Court held that a district court cannot compel the government to apply for immunity. In *United States v. Mendia* (9th Cir. 1984), 731 F.2d 1412, 1414, *cert. denied* (1984), 469 U.S. 1035, 83 L. Ed. 2d 399, 205 S. Ct. 509, the Ninth Circuit stated that the decision to grant immunity to a prospective defense witness "is left to the discretion of the executive branch" and that "a district court has neither the power to grant use immunity to individuals the defendant seeks to call as witnesses, nor the power to force the government to grant such immunity." In *United States v. Brutzman* (9th Cir. 1984), 731 F.2d 1449, 1451-52, that same court stated that "[t]his court has emphatically rejected the argument that the sixth amendment provides a defendant with a right to demand use immunity for defense witnesses who invoke their privilege against self-incrimination." (See also *United States v. Ramsey* (7th Cir. 1974), 503 F.2d 524, *cert. denied* (1975), 420 U.S. 932, 43 L. Ed. 2d 405, 95 S. Ct. 1136.) Furthermore, as stated in our discussion of

Illinois law, the courts of this State have never accepted the proposition advanced by the Third Circuit in the *Virgin Islands* case. For these reasons, we conclude that the trial court in the case at bar lacked the authority either to grant immunity to Benson or to order the State to grant such immunity.

■ The next contention raised by the defendant is that she was denied a fair trial because several prospective jurors were excused based on pending traffic tickets or divorce actions. The defendant attempts to analogize the facts of the instant cause to the situation presented in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, where the United States Supreme Court held that the equal-protection clause prohibits the prosecutor from challenging potential jurors solely on the basis of race.

We find the analogy unjustified. The trial court's action in excusing the prospective jurors in the case at bar was based upon an Illinois statute which provided that "[i]t shall be sufficient cause of challenge of a petit juror *** that he is a party to a suit pending for trial in that court." (Ill. Rev. Stat. 1981, ch. 78, par. 14.) The trial court does not have discretion to allow a prospective juror to serve if that juror is subject to statutory disqualification. (*People v. O'Malley* (1986), 143 Ill. App. 3d 474, 478, 493 N.E.2d 82.) Thus, we find no error on the part of the trial court in excusing the prospective jurors in question.

■ The defendant next contends that the court erred in allowing the State to introduce evidence of statements attributable to the defendant which were not disclosed to defense counsel prior to trial as required by Supreme Court Rule 412. Rule 412 provides that "the State shall, upon written motion of defense counsel, disclose to defense counsel *** any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgement of such statements." (87 Ill. 2d R. 412(a)(ii).) The statements in question are the defendant's statement to Inspector Gardley that she had been visiting "[n]o one" in Germany and her statement to Detective Kinsella that Richard Benson was to meet her at the airport but did not know the flight on which she was returning.

The State asserts that prior to trial it furnished defense counsel with a seven-page summary containing the substance of the statements in question. The defendant does not dispute this assertion in her appellate briefs. The State also asserts that the fact that the defendant made conflicting statements to Detective Kinsella was apparent from a police report. The trial court ruled that the seven-page

summary and the contents of the report were sufficient to apprise defense counsel of the substance of the defendant's statements and accordingly denied the motion to exclude testimony concerning those statements.

The purpose of Rule 412 is to avoid surprise and unfairness and to ensure adequate preparation for trial. (*People v. Brown* (1982), 106 Ill. App. 3d 1087, 1094, 436 N.E.2d 696.) Noncompliance with the rule does not require reversal absent a showing of prejudice. (*People v. Cisewski* (1986), 144 Ill. App. 3d 597, 600, 494 N.E.2d 576, *aff'd* (1987), 118 Ill. 2d 163, 514 N.E.2d 970; *People v. Herrera* (1981), 96 Ill. App. 3d 851, 856, 422 N.E.2d 95.) Although the defendant argues that the State did not sufficiently comply with the requirements of Rule 412, she does not state the manner in which the alleged noncompliance resulted in unfairness or prejudiced her in the preparation of her case. Under these circumstances, we find that reversal is not warranted.

■ The defendant's final contention is that the court committed reversible error in allowing the jury to render a verdict on one count, then sending it back for further deliberations on another count. She argues that this procedure served to deny her a fair trial because it "essentially purloined the jury's ability and power to deliberate up until the very last minute."

As previously stated, the jury sent a note to the court stating that it had reached a unanimous verdict on one count but remained divided on the second count. The court accepted the jury's verdict of guilty on the count of possession of a controlled substance, then instructed it to continue deliberations on the count of possession of a controlled substance with intent to deliver. The jury was unable to reach a unanimous verdict on the latter count and the court granted a mistrial as to that count. The defendant's argument with respect to this issue is that she was prejudiced by the court's action because if the jury had been allowed to continue deliberations on both counts, it may have acquitted her on both counts. In our view, this claim of prejudice is far too speculative to warrant reversal of the defendant's conviction and remandment for a new trial.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.