THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE CHANDLER, Defendant-Appellant.

First District (5th Division)   No. 1—88—2667

Opinion filed June 26, 1992.—Rehearing denied July 14, 1992.

Michael J. Pelletier and Leslie Wallin, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Sara Dillery Hynes, and Nicholas C. Giordano, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Following a bench trial, defendant Jesse Chandler was found guilty of two counts of armed violence and two counts of aggravated battery, and sentenced to two concurrent 12-year terms for armed violence. Defendant raises the following issues on appeal: (1) whether the trial court erred in allowing the admission of prior consistent statements; (2) whether the enhancement of aggravated battery to a Class X felony under the armed violence statute constituted a sentence unconstitutionally disproportionate to the of-

fense charged; and (3) whether the trial court failed to consider the importance of a statutory mitigating factor.

The relevant facts are as follows. Carla Manning testified that on November 1, 1985, at around 3 a.m. she was asleep at the home she shared with her two children and her mother and father when she heard defendant ringing the doorbell. Carla testified that she had invited defendant over to her house at 6 p.m. the previous evening to take her and her kids trick-or-treating, but that she did not expect defendant to come over at 3 a.m. in the morning. Carla therefore refused to open the door and told defendant to leave. Defendant replied, "Bitch, you better open the door before I break it down." When Carla again refused to open the door, defendant proceeded to kick the door down. After defendant knocked the door off the hinges, he proceeded up the stairs. Carla informed him that the police were on their way and defendant left. When the police arrived, Carla filled out a report. While Carla was filling out the report, her mother, Dorothy, received a phone call from defendant informing her that he was coming back to their house. Soon thereafter, defendant drove past the house. The officers pursued defendant's car and when they caught up with his parked car two blocks away, they arrested him and charged him with damage to personal property.

On November 7, 1985, Carla and her mother went to court on the damage to personal property complaint. The case was continued to January 13, 1986.

On December 6, 1985, Carla was at her grandmother's second-floor apartment. Also present at her grandmother's house were her mother, Dorothy, Zela Manning, Phyllis Manning, Phyllis' two children, Kimberly and Andrew, Andrew Hamilton, Greg Harrison, and some others. Defendant arrived at Carla's grandmother's house at around 4:30 p.m. Carla testified that her Aunt Phyllis knocked on the window and gestured for defendant to come up to the apartment. Defendant only stayed a few minutes and then returned at approximately 8 or 8:30 that evening. When defendant entered the apartment, he asked for Carla and Dorothy. After he was informed that they were in the bathroom, he jerked the door open and said, "What are you doing, smelling each other's shit?" Carla testified that defendant told her that he wanted to talk to her, but she refused. Defendant said, "If you don't talk I'll whip your ass." Dorothy testified that her niece Cassandra asked defendant, "Whose ass?" Defendant then hit Cassandra several times in the face. Cassandra's boyfriend, Melvin, stepped in and

he and defendant "engaged in hand-to-hand" combat. Dorothy testified that she was hit over the eye as she grabbed a child to get her out of the way. Carla testified that eventually everyone in the apartment tried to help Melvin get defendant away from Cassandra and out of the apartment. During the entire incident, defendant was yelling at Carla to talk to him or he would "jump her." Carla testified that someone opened the door and they all "helped" defendant out of the apartment.

Carla testified that after defendant left, he threw a brick at the second-floor dining room window and broke it. Carla, Dorothy, Phyllis, Cassandra and Kimberly went outside. Dorothy and Carla testified that as they came out of the building, defendant came at them in his car at a high rate of speed. Defendant jumped out of his car with a gun in his hand, and began to approach Carla and Dorothy. As he approached, defendant yelled upstairs for the "m----- f-----" who beat him to come down. Defendant began hitting Dorothy repeatedly in the head with the gun, knocking her unconscious. When Carla came to the aid of her mother, defendant began to hit her with the gun, briefly knocking her unconscious.

When Dorothy and Carla regained consciousness, defendant was still beating them. Carla and Dorothy testified that during the beating, defendant told them that they "should not have gone to Court against him." Defendant then put his gun in Dorothy's mouth and stated that "since you two are bitches, I will make sure you don't go back again, where is your white judge now, I should kill you both now." Gregg Arrington then picked up a brick and made a move toward defendant, but defendant threatened to shoot Dorothy, so Gregg dropped the brick. Isaac Love also tried to approach defendant, but ran when defendant took a swing at him.

Defendant left before the police arrived. The parties stipulated that Dorothy was admitted to Englewood Hospital suffering from an acute concussion, trauma to the skull, neck injuries, a spinal column injury, an injury to the left elbow requiring six stitches, multiple bruises to the abdomen, a broken nose, one broken and three loose teeth that required dentistry, and severe swelling/soft tissue damage to the left eye. Dorothy remained in the hospital for 12 days. Carla was treated and released from the hospital with a broken nose and contusions.

Defendant testified that when he went into the bathroom and saw Carla and Dorothy, and Carla refused to talk with him, they started arguing. Cassandra joined in the argument, then pulled

out a paring knife from her pocket. Defendant pushed her away and she tripped and fell into the bedroom. Cassandra's boyfriend Melvin then hit defendant and the two started tussling.

Defendant testified that he felt people kicking him in the back of his head and he heard things being thrown at him, but testified that most things did not hit him. Defendant testified that during the fight with Melvin, they crashed into the window, breaking it. Defendant then saw Dorothy come out of the kitchen with a knife. He could not leave the apartment since the door was locked with a key from the inside. When the door was finally opened, defendant ran out. Melvin then began fighting with defendant in the hallway. Defendant testified that Dorothy then tried to poke defendant with the knife in the hallway. Defendant hit Dorothy in the face and caused her to fall down the stairs. Defendant ran down the stairs, stepping on Dorothy to get outside.

Once outside, defendant testified that Dorothy and Melvin were still chasing him. Defendant's brothers, David and Douglas, then drove up. The car stopped, and Douglas jumped out with a gun. Defendant testified that Melvin ran away but Dorothy came at him with a knife. Defendant hit her in the face. Carla went to help her mother and as defendant was entering his car, Carla picked up the knife and cut defendant on his arm. Defendant then grabbed Carla, twisted her arm, and hit her in the face causing her to fall. Defendant then drove away, leaving the two women lying in the street. Defendant testified that he showed police the injury to his arm, but they did not write it down in their report.

Defendant first contends on appeal that the trial court erred when it allowed the admission of prior consistent statements made by Dorothy and Carla. Defendant objected to the court's ruling on this issue at trial, but failed to include this issue in his motion for a new trial. We nonetheless consider this issue in order to determine whether plain error exists. *People v. Torres* (1977), 53 Ill. App. 3d 171, 368 N.E.2d 361.

■■ ■ Generally, a witness who has been impeached by a prior out-of-court statement inconsistent with in-court testimony cannot introduce evidence of other prior statements consistent with his in-court testimony. (*People v. DePoy* (1968), 40 Ill. 2d 433, 240 N.E.2d 616.) A prior consistent statement may be admitted to rebut an inference that the testimony is a recent fabrication or an inference that the witness has a motive to testify falsely, but this exception applies only if the prior inconsistent statement was made before the time of the alleged fabrication or the motive to

lie came into existence. *People v. Deavers* (1991), 220 Ill. App. 3d 1057, 580 N.E.2d 1367; *People v. Wheeler* (1989), 186 Ill. App. 3d 422, 542 N.E.2d 524.

Here, Officer Vellegas testified that on December 6, 1985, he responded to a call that there was a man with a gun at 724 West 59th Street. When he arrived at the scene of the disturbance, Carla and her mother, Dorothy, gave him an account of the events that had just occurred. On cross-examination, defense counsel elicited testimony from Officer Vellegas which implied that Dorothy and Carla's story at trial was different from the one they told Officer Vellegas immediately after their encounter with defendant. In order to rebut this inference of recent fabrication, the State introduced the testimony of Detective Griffin, who stated that when he interviewed Carla and Dorothy after they arrived at the hospital on December 6, 1985, Carla and her mother gave him statements consistent with their statements at trial.

Because the victims' consistent statements were made after the inconsistent ones, and the victims had the same motive to fabricate (to exculpate themselves and inculpate defendant) when making the prior consistent statements as they did at trial, it is our opinion that the prior consistent statements were not admissible. We nonetheless find that the admission of the prior consistent statements was harmless error, since Dorothy and Carla's testimony was corroborated by other evidence, particularly the testimony of Andrew Hamilton and Phyllis Manning.

Defendant next contends that the Class X penalty for his conviction for armed violence is unconstitutionally disproportionate because it is more severe than the potential punishment for a more serious offense, voluntary manslaughter. What defendant contends is that if either of the victims had died, he would have been guilty of voluntary manslaughter, a Class 1 felony, punishable by a sentence of 4 to 15 years, but because his conduct did not result in death, he was found guilty of armed violence, which is a Class X felony, punishable by a sentence of 6 to 30 years. (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4, 1005—8—1(3).) His argument that his punishment is unconstitutionally disproportionate to his conduct rests on the assumption that if one of defendant's victims had died, he would have been charged with manslaughter, rather than murder. We simply refuse to make that assumption. Therefore, we need not address whether the Class X penalty for defendant's conviction for armed violence is unconstitutional.

■ Defendant's last contention is that this cause must be remanded for resentencing because the trial court failed to consider the mitigating factor that defendant acted under a strong provocation. The trial court is not obligated to recite and assign a value to each fact presented in evidence at the sentencing hearing. (*People v. Halstead* (1987), 164 Ill. App. 3d 1, 517 N.E.2d 667.) Furthermore, where mitigation evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication (other than the sentence imposed) to the contrary. *People v. Baker* (1983), 114 Ill. App. 3d 803, 448 N.E.2d 631.

As defendant points out, the trial court stated that "whether you were the instigator or the commencer of the argument and the physical confrontations in the apartment or whether somebody else was is not important." However, when the remarks of the trial court are read in their entirety, it is clear that the trial court did in fact consider the mitigating evidence presented. The trial court found that "there was a hiatus between [defendant] leaving the apartment and the time that the ladies left the apartment and there was a confrontation on the street and as a result, [defendant] would have had time to calm down and to—if [defendant] thought somebody had done you wrong—to make a complaint to the police and have them arrested." The trial court also noted that it considered all of the factors both in aggravation and mitigation, and we see no reason to believe otherwise. We therefore find no abuse of discretion on the part of the trial court in sentencing defendant.

Accordingly, for the reasons set forth above, defendant's convictions for armed violence are affirmed.

Affirmed.

LORENZ and MURRAY, JJ., concur.